UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NINA COLBERT                                    Case No. 13-13801
O/B/O J.V.R., a minor,

                                                Denise Page Hood
            Plaintiff,                          United States District Judge
v.

                                                Michael Hluchaniuk
COMMISSIONER OF SOCIAL SECURITY,                United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 10, 12)**

I.     **PROCEDURAL HISTORY**

       A.     **Proceedings in this Court**

       On September 6, 2013, plaintiff, mother of J.V.R., a minor child, filed the

instant suit seeking judicial review of the Commissioner's unfavorable decision

disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local

Rule 72.1(b)(3), District Judge Denise Page Hood referred this matter to the

undersigned for the purpose of reviewing the Commissioner's decision denying

plaintiff's claim for supplemental security income childhood disability benefits on

J.V.R.'s behalf.  (Dkt. 3).  This matter is currently before the Court on cross-

motions for summary judgment.  (Dkt. 10, 12).

**B.     Administrative Proceedings**

Plaintiff filed the instant claim for supplemental security income childhood disability benefits on September 21, 2010, on behalf of her minor child, J.V.R., alleging disability beginning on November 1, 2009.  (Dkt. 6-5, Pg ID 170-75).  The claim was initially disapproved by the Commissioner on December 6, 2010 (Dkt. 6-3, Pg ID 103), and again on reconsideration on February 8, 2011.  (Dkt. 6-3, Pg ID 106).  Plaintiff requested a hearing and on March 23, 2012, plaintiff and J.V.R. appeared, without a representative, before Administrative Law Judge (ALJ) Ramona L. Fernandez, who considered the case *de novo*.  (Dkt. 6-2, Pg ID 73-101). In a decision dated April 10, 2012, the ALJ found that J.V.R. was not disabled. (Dkt. 6-2, Pg ID 53-68).  Plaintiff requested a review of this decision, and the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits,[1] the Appeals Council, on July 25, 2013, denied plaintiff's request for review.  (Dkt. 6-2, Pg ID 30-33); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

For the reasons set forth below, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

The claimant, J.V.R., was four years old when she was diagnosed with asthma and seven years of age at the time of the administrative hearing.  (Dkt. 6-2, Pg ID 59, 80).  At Step I of the three-step sequential evaluation process, the ALJ found that J.V.R. did not engage in substantial gainful activity since September 21, 2010, the application date.  (Dkt. 6-2, Pg ID 59).  At Step II, the ALJ found that J.V.R. had asthma, which she found to be a severe impairment that caused more than minimal functional limitations.  (Dkt. 6-2, Pg ID 59).  At Step III, the ALJ found that J.V.R. did not have an impairment or combination of impairments that met or medically equaled the Listings or that functionally equaled the Listings. (Dkt. 6-2, Pg ID 59-68).  In denying plaintiff's claim, the ALJ evaluated J.V.R.'s degree of limitation in each of the six functional equivalence domains and concluded that she did not have "marked" or "extreme" limitations in any of the six broad functional domains and thus did not functionally equal a listed impairment. (Dkt. 6-2, Pg ID 62-68).  The ALJ thus determined that J.V.R. has not been

disabled since September 21, 2010 through the date of the decision.  (Dkt. 6-2, Pg
ID 68).

    **B.**    **Plaintiff's Claims of Error**

Plaintiff contends that the ALJ rendered an incomplete analysis as to the
domain of health and physical well-being.  According to plaintiff, in addressing a
claim for childhood disability benefits, the domain of "health and physical well-
being" is to be evaluated in accordance with SSR 09-8p, which recognizes not only
the physical affects of a given condition, but also the consequences of its treatment.
The ruling further notes that "periods of therapy can be frequent or time-
consuming...," and the fact that a claimant requires frequent treatment or therapy is
relevant to the analysis.  *Id*.  Plaintiff continues that, for conditions like asthma that
can be considered "episodic," the ruling states, "[w]hen symptoms and signs
fluctuate, we consider the frequency and duration of exacerbations, as well as the
extent to which they affect a child's ability to function physically."  *Id*. Plaintiff
argues that the ALJ's analysis of this domain does not adequately take these
matters into account or fulfill the requirements of SSR 09-8p.  According to
plaintiff, the fact that J.V.R.'s condition could *eventually* be controlled by her
medication such that she did not need frequent doctor's visits or trips to the
emergency room should not be dispositive.  Plaintiff testified that she always tried
to head off a problem at home, rather than seeking formal treatment (Tr. 59-60),

and the ME testified that plaintiff had become adept at treating her daughter's condition. (Tr. 70-71). Plaintiff argues, however, that the treatment involved, as well as its frequency and the amount of time consumed, are still relevant, as SSR 09-8p includes "nebulizer treatments" in the list of those therapies which can be "frequent or time-consuming." According plaintiff, she testified that breathing treatments could take as long as six hours to complete. (Tr 60). Consequently, plaintiff concludes, it was not merely the visits to doctors' offices or the hospital that should have been considered, but also the home treatments. Plaintiff asserts that the fact that she could most often bring an acute problem under control using such time-consuming procedures does not render them or their consequences irrelevant. Plaintiff argues, however, that the ALJ completely failed to consider the impact of these therapies.

Plaintiff further argues that SSR 09-8p recognizes that episodic conditions like asthma manifest in "periods of worsening (exacerbation) and improvement (remission), and when symptoms and signs fluctuate, we consider the frequency and duration of such exacerbations, as well as the extent to which they affect a child's ability to function physically." Plaintiff contends that the ALJ neglected to take this factor into account, as well by his failure to consider the consequences of J.V.R.'s home therapies, as opposed to those treatments provided in a more formal setting such as a doctor's office or hospital. Plaintiff further contends that the

5

consequences of treatment must be considered taking into account J.V.R.'s age. SSR 09-8p states that "we must consider the expected level of functioning for given child's age in determining the severity of a limitation." Plaintiff argues that, in this regard, for example, the loss of four to six hours out of a given day would constitute a far greater portion of the day for a seven-year-old than it would for a 16-year-old who would likely be awake several more hours in the course of a day. Plaintiff argues that the ALJ's analysis failed to consider this issue as well. Plaintiff concludes that the ALJ's failure to fully consider the nature of the domain of health and physical well-being has led to an inadequate decision that must be remanded for further consideration.

### C.    The Commissioner's Motion for Summary Judgment

The Commissioner argues that the ALJ reasonably found that J.V.R.'s asthma did not meet, medically equal, or functionally equal a listed impairment. According to the Commissioner, plaintiff does not challenge the ALJ's finding that J.V.R.'s asthma was a severe impairment that did not meet or medically equal a listing, but only argues that the ALJ did not properly assess J.V.R.'s limitations in the domain of health and physical well-being. The ALJ concluded that J.V.R. did not have "marked" or "extreme" limitations in any of the six broad functional domains and thus did not functionally equal a listed impairment. (Tr. 30-39). According to the Commissioner, substantial evidence supports the ALJ's finding

that J.V.R. had less than marked limitations in the domain of health and physical
well-being.  (Tr. 39).

 The Commissioner asserts that the ALJ noted that plaintiff restricted
J.V.R.'s physical activity as necessary to prevent asthma attacks.  (Tr. 39, citing Tr.
66).  For example, plaintiff stated that she would limit J.V.R. to riding her bike for
only a couple of hours per day and that she did not enroll J.V.R. in any sports or
cheerleading programs.  (Tr. 66).  The Commissioner argues that despite these
restrictions, J.V.R. testified that she could still play outside with her friends at
recess, go to parks to play with her family, ride her bike at her grandmother's
home, and play basketball at home.  (Tr. 53-54).  The Commissioner contends that
J.V.R.'s participation in outdoor activities does not reflect that she had marked or
extreme limitations.

 The Commissioner further argues that the ALJ also noted that J.V.R.'s
asthma was well-controlled with medication.  (Tr. 39).  Treatment notes from
January 2011, when J.V.R. was still living in Florida, show that her asthma
improved with medication and that her symptoms had reduced with Advair, despite
some persistent symptoms that were exercise-induced.  (Tr. 311).  Notably, the
Commissioner continues, plaintiff testified that J.V.R.'s asthma was most severe
while they were living in Florida, but that her symptoms improved when they
moved to Michigan in June 2011.  (Tr. 57).  Plaintiff said that J.V.R. went to the

doctor for check-ups once every other month and used Singulair daily, an Advair inhaler twice daily, and an Albuterol inhaler as needed. (Tr. 67). The Commissioner notes that although J.V.R. went to the emergency room in February 2012, plaintiff confirmed that J.V.R. had never been hospitalized for her asthma. (Tr. 65, 331-34). According to the Commissioner, J.V.R.'s ability to control her symptoms with medication does not reflect marked limitations in her health or physical well-being.

The Commissioner further argues that the ALJ's finding is also supported by the testimony from the medical expert, Dr. Kumar, and the reports prepared by the DDS doctors. Dr. Kumar stated that J.V.R. did not have an impairment that medically met or functionally equaled a listing, and he opined that she did not have any limitation in acquiring and using information, attending and completing tasks, caring for herself, or interacting and relating with others, and less than marked limitations in manipulating objects and health and physical well-being. (Tr. 69-71). The Commissioner further states that Dr. Kumar noted that plaintiff was able to adequately control J.V.R.'s symptoms. (Tr. 71). The Commissioner asserts that, similarly, neither of the DDS doctors found that J.V.R. had an impairment that functionally equaled a listing. (Tr. 292-96, 319-21). The Commissioner argues that although the ALJ only gave "some weight" to the opinions of the DDS doctors, their opinions, along with the opinion of Dr. Kumar, fail to indicate that

8

J.V.R. had marked limitations in any domain.  (Tr. 32).

The Commissioner further asserts that the ALJ's findings are also supported by the questionnaire responses from J.V.R.'s first-grade teacher, who did not indicate that J.V.R. had any functional limitation in any domain.  (Tr. 228-34). The report further detailed that J.V.R. was able to function well in school with no apparent difficulties associated with asthma.  (Tr. 234).

According to the Commissioner, plaintiff argues that the ALJ did not fully consider the amount of time J.V.R. would need to spend on her treatment for asthma.  She contends that her treatment for asthma was "time-consuming," taking "as long as six hours to complete."  The Commissioner contends that plaintiff grossly mischaracterizes the extent of J.V.R.'s treatment, as plaintiff did not testify that treatment *lasted* six hours; rather, she stated that she provided treatment once up to every four to six hours.  (Tr. 60).  The Commissioner argues that plaintiff incorrectly confuses the duration of J.V.R.'s treatment with the frequency of her treatment.  As noted above, the ALJ acknowledged that J.V.R. used medication, including inhalers, on a daily basis (Tr. 67), but the record does not reflect that she would require four to six hours of treatment per day, as plaintiff contends.

The Commissioner contends that plaintiff also argues that the ALJ did not account for the fact that J.V.R.'s condition may fluctuate.  However, the Commissioner argues, the record revealed that plaintiff was able to control J.V.R.'s

symptoms through medication and by restricting her level of activity when necessary.  Indeed, the Commissioner continues, Dr. Kumar also agreed that plaintiff was able to control J.V.R.'s symptoms.  (Tr. 71).  The Commissioner asserts that the record does not show that J.V.R. would have frequent or severe flare-ups of her symptoms.  Since moving to Michigan, J.V.R. only went to the emergency room once and she was never hospitalized. Outside of the February 2012 emergency room visit, there is no medical record documenting that J.V.R.'s symptoms significantly worsened or would be susceptible to flare-ups.  The Commissioner argues, accordingly, that the record fails to demonstrate that J.V.R. would have significant periods of worsening that would cause marked or extreme limitations on her health or physical well-being.

The Commissioner continues that even assuming, *arguendo*, that J.V.R. had a marked limitation on her physical well-being, plaintiff has not identified any reversible error.  To functionally equal the listings, a claimant must show that her impairments resulted in "marked" limitations in *two* domains or an "extreme" limitation in one domain.  *See* 20 C.F.R. § 416.926a(d).  According to the Commissioner, plaintiff has not alleged that J.V.R. has marked limitations in any other domain and has not argued that she had "extreme" limitations on her physical well-being or any other domain.  Therefore, the Commissioner argues, plaintiff has not alleged that J.V.R. functionally equals any listing and waives any argument to

10

the contrary. *See Young v. Sec'y of Health & Human Servs.*, 925 F.2d 146, 149

(6th Cir. 1990) (issues not raised in district court are waived); *see also McPherson*

*v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("Issues adverted to in a

perfunctory manner, unaccompanied by some effort at developed argumentation,

are deemed waived. It is not sufficient for a party to mention a possible argument

in the most skeletal way, leaving the court to put flesh on its bones.") (citation and

internal quotation omitted).

The Commissioner concludes, therefore, that the ALJ's findings are

supported by the evidence, including the medical opinion from Dr. Kumar, the

report from J.V.R.'s teacher, and the testimony from both J.V.R. and plaintiff, and

accordingly, this Court should not disturb the ALJ's findings.

### D.    Plaintiff's Reply Brief

Plaintiff argues that the Commissioner incorrectly contends in her motion

that plaintiff has not identified any reversible error because she only argues that

J.V.R. has a marked limitation as to her health and physical well-being, and a

finding that she functionally equals a listing requires a finding of "marked"

limitations in two domains or "extreme" limitations in one.  According to plaintiff,

her motion expressly notes that a listing is functionally equaled if a claimant

establishes "extreme" limitations in a single domain, and plaintiff argues that the

ALJ erred in finding that J.V.R.'s impairment did not satisfy that standard.

Plaintiff contends that this Court therefore should find that plaintiff met the standard by proving "extreme" limitations in the domain of health and physical well-being, and grant benefits accordingly.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the

record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding

whether substantial evidence supports the ALJ's decision, "we do not try the case

de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383,

387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to

evaluate the credibility of witnesses, including that of the claimant."  *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a

claimant's subjective complaints and may ... consider the credibility of a claimant

when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502

F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the

claimant are to be given great weight, particularly since the ALJ is charged with

observing the claimant's demeanor and credibility.") (quotation marks omitted);

*Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence.").  "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion

about an individual's credibility.'"  *Rogers*, 486 F.3d at 247 (quoting Soc. Sec.

Rul. (SSR) 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Legal Standards - Eligibility For SSI Childhood Disability Benefits

A child will be considered disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations."  42 U.S.C. § 1382c(a)(3)(C)(I).  To determine whether a child's impairments result in marked and severe limitations, Social Security Administration (SSA) regulations prescribe a three step sequential evaluation process:

1.    A child will be found "not disabled" if he engages in substantial gainful activity.

2.    A child will be found "not disabled" if he does not have a severe impairment or combination of impairments.

3.    A child will be found "disabled" if he has an impairment or combination of impairments that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1. 20 C.F.R. § 416. 924(a)-(d).

15

To determine whether a child's impairment functionally equals the listings, the SSA will assess the functional limitations caused by the child's impairment. 20 C.F.R. § 416.926a(a). The SSA will consider how a child functions in six domains:

1.     Acquiring and using information;

2.     Attending and completing tasks;

3.     Interacting and relating with others;

4.     Moving about and manipulating objects;

5.     Caring for yourself; and

6.     Heath and physical-being.

20 C.F.R. § 416.926a(b)(1). If a child's impairments result in "marked" limitations in two domains, or an "extreme" limitation in one domain,[2] the impairment functionally equals the listing and the child will be found disabled. 20 C.F.R. § 416.926a(d).

### C.    Analysis and Conclusions

Plaintiff does not object to the ALJ's conclusion that J.V.R.'s impairment, asthma, did not meet the Listings. Rather, her appeal focuses on the ALJ's assessment of whether J.V.R.'s impairment functionally equaled an impairment in

_____

[2] A marked limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). An extreme limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3).

16

the Listings, based on an assessment of the six domains found in 20 C.F.R.

§ 416.926a(a).  As explained above, J.V.R. has to show that the ALJ's decision that

she suffered from less than marked limitations in two of the six domains, or

extreme limitations in one domain, is unsupported by substantial evidence.

The ALJ found that J.V.R.'s asthma was a severe impairment, but that it did

not meet or equal a listed impairment.  (Tr. 30).  The ALJ then assessed the

functional limitations caused by J.V.R.'s severe impairment and found that she had

no limitations in the domains of acquiring and using information, attending and

completing tasks, interacting and relating with others, or caring for herself, and that

she has less than marked limitations in the domains of moving about and

manipulating objects and health and physical well-being.  (Tr. 33-39).  Plaintiff

challenges that ALJ's finding only as to the domain for health and physical well-

being, arguing that J.V.R. has "extreme" limitations in this domain.[3]

---

[3] As plaintiff acknowledges in her reply brief, to functionally equal a listing, she must show that J.V.R. had "marked" limitations in two domains or "extreme" limitations in one, and plaintiff urges this Court to find that J.V.R. has met this standard by having "extreme" limitations in the domain of health and physical well-being.  (Dkt. 13).  The regulation generally defines an "extreme" limitation as follows:

> (i) We will find that you have an "extreme" limitation in a domain when your impairment(s) interferes very seriously with your ability to independently initiate, sustain, or complete activities. Your day-to-day functioning may be very seriously limited when your impairment(s) limits only one activity or when the interactive and cumulative effects of your impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked." "Extreme" limitation is the rating we give to the worst limitations. However, "extreme limitation" does not necessarily mean a total lack or loss of ability to function. It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean.

The domain for health and physical well-being considers the cumulative physical effects of physical and mental impairments and any associated treatments or therapies on a child's functioning that were not considered in the evaluation of the child's ability to move about and manipulate objects.  20 C.F.R. § 416.929a(I). Social Security Regulation 20 C.F.R. § 416.926a(i)(3) sets forth some examples of limited functioning in this domain that children of any age might have; however, the examples do not necessarily describe marked or extreme limitation in the domain.  Some examples of difficulty children could have involving their health and physical well-being are: (i) generalized symptoms, such as weakness, dizziness, agitation (e.g., excitability), lethargy (e.g., fatigue or loss of energy or stamina), or psychomotor retardation because of any impairment(s); (ii) somatic complaints related to an impairment (e.g., seizure or convulsive activity, headaches, incontinence, recurrent infections, allergies, changes in weight or eating habits, stomach discomfort, nausea, headaches or insomnia); (iii) limitations in physical functioning because of treatment (e.g., chemotherapy, multiple surgeries, chelation, pulmonary cleansing, or nebulizer treatments); (iv) exacerbations from an impairment(s) that interfere with physical functioning; or (v) medical fragility requiring intensive medical care to maintain level of health and physical well-being.  The regulation provides, with respect to this domain:

---

20 C.F.R. § 416.926a(e)(3)(i).

> (iv) For the sixth domain of functioning, "Health and physical well-being," we may also consider you to have an "extreme" limitation if you are frequently ill because of your impairment(s) or have frequent exacerbations of your impairment(s) that result in significant, documented symptoms or signs substantially in excess of the requirements for showing a "marked" limitation in paragraphs (e)(2)(iv) of this section. However if you have episodes or illness or exacerbations of your impairment(s) that we would rate as "extreme" under this definition, your impairment(s) should meet or medically equal the requirements of a listing in most cases. See §§ 419.925 and 416.926.

20 C.F.R. § 416.9261(e)(3)(iv).

The ALJ here found:

> The claimant has less than marked limitations in health and physical well-being. Claimant is diagnosed with asthma and there appear to be environmental trigger[s]. Her mother limits her physical activity and there is a history of routine medical visits, albeit occurring only about one every month or two. There is a history of two ER visits but there have been no hospitalizations. Claimant does take medication daily but records and testimony affirm that this controls the symptoms.

(Tr. 39). The undersigned concludes that substantial evidence supports the ALJ's determination that J.V.R.'s asthma symptoms do not meet the above-stated criteria for an "extreme" limitation in her health and physical well-being. To be sure, the record shows that she required medication for asthma and received two instances of emergency treatment for that condition in the past. However, neither the treating nor academic records suggest that the condition significantly impacted

19

J.V.R.'s functioning, must less created a marked or extreme limitation.

The ALJ noted that J.V.R.'s mother testified that she restricted her daughter's physical activity as necessary, and that J.V.R. testified that she plays with other children at recess and enjoys going down the slide, she goes to the park with her older siblings, she rides her bicycle at her grandmother's house, she plays basketball at home and has no difficulty running and playing. (Tr. 31, 39, 53-54, 66). Based on these findings, the fact that J.V.R. has asthma and her mother somewhat restricts her activities is insufficient to support a finding that she has an extreme limitation in the area of health and physical well-being. *See Williams v. Astrue*, 2008 WL 2326325, at *4 (M.D. Ala. June 3, 2008) ("The mere fact that A.D.W. has asthma and cannot be outside for extended periods of time is insufficient to support a finding that he has an extreme or even marked limitation in the area of health and physical well-being. Thus, the ALJ's conclusion that A.D.W. does not have more than a "marked" impairment in the health and physical well being area of functioning is supported by the record."); *Russell v. Astrue*, 742 F. Supp.2d 1355, 1376-77 (N.D. Ga. 2010) (noting plaintiff played outside, rode his bike, and participated in gym class as substantial evidence supporting ALJ's conclusion that plaintiff was less than markedly limited in the domain of health and physical well-being, despite his asthma).

The ALJ also noted that J.V.R.'s asthma is well-controlled with medication

(Tr. 39), and the treatment records support that finding, generally noting no rales or rhonchi and only periodic instances of wheezing. (Tr. 259, 262, 282, 286-87, 299). A pulmonary evaluation performed in January 2011, when J.V.R. still resided in Florida, noted that J.V.R. was having some degree of persistent symptoms, particularly exercise-induced symptoms, but that the "overall tone of her symptoms has reduced" since starting Advair. (Tr. 311). At that examination, J.V.R.'s lungs were clear, with no wheezes, rales or rhonchi, normal inspiratory and expiratory phases, and no evidence of increase work of breathing, and the doctor opined that "Advair is effective at controlling her symptoms as it would seem she is not requiring courses of steroids or trips to urgent care or the emergency room with these episodes." (Tr. 311-12). And, at an examination in February 2012, after J.V.R. had moved to Michigan, J.V.R.'s treating physician, Dr. Byrd, noted that J.V.R. had been doing well since moving to Michigan, that her lungs were clear with no rales, rhonchi or wheeze appreciated, and Dr. Byrd assessed J.V.R. with moderate persistent asthma. (Tr. 339-41). The record shows that J.V.R. went to the emergency room two times for treatment for her asthma, (in September 2010 in Florida, and February 2012 in Michigan), but that she has never been hospitalized for that condition. (Tr. 65, 302, 331-36).

Plaintiff acknowledges that J.V.R.'s condition was "eventually" controlled, and that her condition has improved since moving to Michigan, but argues that the

ALJ failed to consider the impact of her treatment for asthma, arguing that this treatment was time-consuming, "tak[ing] as long as six hours to complete." (Dkt. 10, citing Tr. 60). However, the ALJ acknowledged J.V.R.'s treatment, including that she used medication, including inhalers, on a daily basis, and occasionally needed breathing treatments. (Tr. 31-32). However, plaintiff has not offered any record evidence that J.V.R. required four to six hours of treatment a day, as argued in her motion. (See Tr. 60, testifying that J.V.R. needs breathing treatments "every four to six hours or as needed"). Rather, the record shows that J.V.R.'s mother was able to control her daughter's symptoms and that J.V.R. did not have frequent or severe flare-ups of her symptoms. As the ALJ noted, there have been no hospitalizations and, other than the emergency room visit in February 2012 since moving to Michigan, the record does not show that J.V.R. has had frequent or severe flare-ups of her symptoms. Indeed, plaintiff testified that J.V.R. generally went to the doctor for check-ups once every other month. (Tr. 66-67).

Accordingly, the undersigned concludes that the frequency or length of J.V.R.'s asthma symptoms and treatment does not meet that of an extreme, or even marked limitation. *See Patterson ex rel. TJP v. Comm'r of Soc. Sec.*, 2010 WL 2218629, at *6-7 (E.D. Mich. May 6, 2010) (ALJ's finding that claimant's asthma did not functionally equal a listing is supported by substantial evidence, as claimant's asthma was controlled with medication and intervention and there is no substantial

22

evidence of frequency of breathing treatments or exacerbations having a marked or extreme limitation on claimant's functioning), *adopted by* 2010 WL 2218424 (E.D. Mich. May 28, 2010); *see also Bradford v. Astrue*, 2011 WL 96668, at *5 (W.D. Ark. Jan. 11, 2011) (ALJ's determination that claimant had no limitation in her health and physical well-being is supported by substantial evidence showing that her asthma was "mild" and successfully treated with medication, and she had never been hospitalized and did not miss much school due to her asthma).

The ALJ's decision also finds support in the opinions of the medical assessments made by disability determination services physicians who completed Childhood Disability Evaluation forms. Specifically, in December 2010, the examiner found no limitation in any of the functional domains except health and physical well-being, where the examiner found less than marked limitation. (Tr. 292-97). In February 2011, another DDS physician made no response to the first three domains, found no limitations concerning the next two, and less than marked limitation in health and physical well-being due to asthma. (Tr. 317-24). The ALJ gave these opinions "some weight," finding that the opinions were not representative of the entire period of the alleged disability. The ALJ gave the "most weight" to the opinion of Dr. Kumar, the medical expert present at the hearing who examined the entire medical record and heard the testimony of both J.V.R. and her mother. Dr. Kumar found no limitations as to the first three

23

domains and in domain five, and less than marked limitations in the domains of ability to move about and manipulate objects and in health and physical well-being. (Tr. 70-71). The ALJ adopted the domain limitations as found by Dr. Kumar, finding them well supported by the objective evidence, treatment history and the testimony of both J.V.R. and her mother. (Tr. 33). *See Pagan ex rel. A.C. v. Astrue*, 718 F. Supp.2d 176, 184 (D. Mass. 2010) (substantial evidence supported ALJ's conclusion of "less than marked" limitation in claimant's health and physical well-being, as ALJ's decision found support in opinions of state agency physicians). The ALJ's decision is further supported by the questionnaire responses from J.V.R.'s teacher, who indicated that J.V.R. did not have any functional limitations in any domain, and that J.V.R. was able to function well in school with no apparent difficulties associated with asthma. (Tr. 32, 228-35).

Accordingly, the undersigned concludes that the ALJ's determination that J.V.R. had less than marked limitation in her health and physical well-being is supported by substantial evidence, and plaintiff's claim of error should be denied.

## IV.   RECOMMENDATION

For the reasons set forth above, it is **RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED**, defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 8, 2014                    s/Michael Hluchaniuk
                                      Michael Hluchaniuk
                                      United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on July 8, 2014, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the parties of record.

                                      s/A. Chubb for Tammy Hallwood
                                      Case Manager
                                      (810) 341-7887
                                      tammy_hallwood@mied.uscourts.gov